Mary BELL; Thomas E. Bell, as Next of Friend; and Hon. Richard Dawahare, Appellants

v.

COMMONWEALTH of Kentucky, CABINET FOR HEALTH AND FAMILY SERVICES, DEPARTMENT FOR COMMUNITY BASED SERVICES, Appellee.

No. 2012–SC–000600–DG.

Supreme Court of Kentucky.

Feb. 20, 2014.

Richard Frank Dawahare, Lexington, KY, Counsel for Appellants.

Timothy J. Salansky, Cabinet for Health and Family Services, Office of Legal Services, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice NOBLE.

This case presents two questions. First, may a trial court order the payment of attorney's fees solely for egregious conduct without statutory authorization or a contract providing for such fees? Second, may a trial court order the disclosure of records of all persons participating in a federally funded community-based services program operated by the Cabinet for Health and Family Services after having decided the claim of one person without the other persons having filed claims and no class action being certified? The answer to both questions is no.

## I. Background

Appellant Mary Bell is a disabled person who drew SSI (Social Security Insurance) benefits, was qualified for Medicaid, and participated in a community-based program developed and run by the Cabinet for Health and Family Services known as the Home and Community Based Waiver Program (HCBW). This program is under the direct supervision of the Department of Community Based Services (DCBS), and provides services to the elderly or disabled to help them remain at home. In particular, Mary attended Redwood School and Rehab Center.

The Cabinet uses a formula to determine the cost to a participant based on her income, and there may be a co-payment to participate if the participant's income exceeds their Personal Needs Allowance (Allowance) as set by the agency. If a person's sole income is SSI, then the formula determines that the participant's Allowance is equal to the amount of SSI received, and there is zero cost to the participant for program services. If a participant has other income, the Allowance serves as a base number, and the participant is charged a co-payment commensurate with his or her excess income. Programs such as the center Mary attended have obvious costs, and state dollars for programs are limited. Thus when a participant can, she is asked to bear part of the cost for her program.

As a dependent of her father, Thomas Bell, Mary became eligible for Old Age, Survivor and Disability Insurance, known as RSDI benefits, when he retired and began to draw his Social Security benefits. This amount was larger than the amount she received from SSI. In accordance with its policy, DCBS calculated the difference between Mary's Allowance as a program participant and her new benefit amount, and determined that Mary would owe

$60.00 per month as her co-pay for continued program participation.

Her father, as her legal custodian, filed an administrative appeal on Mary's behalf, claiming that under a federal act known as the Pickle Amendment to the Social Security Act, persons in Mary's position were entitled to have their new income amount adjusted according to a federal table. He claimed that under that table, Mary's income adjustment kept her below her Allowance amount, so that she would have maintained a net zero cost for program participation. The hearing officer denied this claim, finding that the Pickle Amendment only applied to the Pass–Through program which paid for institutionalized treatment in a nursing home, that Mary was not in such treatment, and thus that the Cabinet could continue to assess the co-pay.

Mr. Bell appealed to the Franklin Circuit Court. In addition to seeking review of the administrative decision, he requested all other relief to which he might be entitled. As the case progressed, he claimed he was also entitled to attorney's fees and to disclosure of the records of other individuals who were being charged a fee for program participation

At a hearing on the matter, the Franklin Circuit Court stated that it was reserving judgment on the request for attorney's fees and the requested disclosure until after any appeal was completed. After the hearing, the court ruled on the merits of the case, holding that because it was cheaper, "it is only rational" that the Pickle Amendment be extended to apply to Mary's situation and that she could not be charged to participate. The decision stated that it was final and appealable. The Cabinet untimely filed a CR 59.05 motion, which the court did not hear. Thereafter, the Cabinet let the time to appeal expire, deciding to abide by the trial court's ruling on the Pickle Amendment in this case.

Forty-three days after entry of the judgment, Mary's father moved the trial court to award attorney's fees and to order disclosure of the records of every other individual who was being charged a fee for program participation. The Cabinet argued that this motion was untimely, as the court had entered its judgment on the Pickle Amendment and stated that the judgment was final and appealable. The court, having reserved ruling on those issues and recognizing that no appeal had been taken, determined that the motion was timely.

Stating that the Cabinet's conduct in charging Mary a participant fee was "egregious government behavior," the trial court awarded attorney's fees against the Cabinet. The judge purported to have the authority to do this because of the inherent and equitable powers of the court, even though Kentucky has long been a jurisdiction that follows the "American Rule" in not awarding attorney's fees to the prevailing party absent a statutory authorization, pursuant to a contract, or as a sanction for contempt.

Additionally, the court stated that the Cabinet's "arbitrary" conduct no doubt impacted other program participants, and that "the cold hard truth [was] that many of these patients will have no chance for redress of the Cabinet's arbitrary position if the Court does not order it to produce certain records." The court therefore ordered the Cabinet to provide Appellant's counsel with the names, addresses, income information and other personal information of all the participants in the program.

The Cabinet appealed, and the Court of Appeals reversed the attorney's fees award, holding that it was time-barred and beyond the trial court's power. The court also reversed the disclosure order. Be-

cause this is a case of first impression, this Court granted discretionary review.

## II. Analysis

The trial court's ruling on the applicability of the Pickle Amendment to these facts is not before the Court, not having been appealed, and that ruling is the substantive law of this case. However, because the trial court's view of how the Pickle Amendment applies is entwined with its view that the Cabinet's conduct was egregious, leading it to believe it had equitable or inherent jurisdiction, that amendment will be discussed at points of the analysis.

But the real issues before this Court are whether the trial court did in fact have equitable or inherent power that would allow it to award attorney's fees against the Cabinet, or any party similarly situated, and whether the trial court properly ordered disclosure of all other program participants similarly situated after finality of the merits issue. We hold that it does not have such authority, and since this is dispositive of the case regarding attorney's fees, will not discuss other arguments, such as whether separation of powers and related doctrines bar the awarding of attorney's fees against the state under these facts, or whether the motion was untimely. We also hold that the court's ordered disclosure of other participants' personal information was improper.

### A. Attorney's fees

■ Historically, courts ruled based on the common law, code or statutory law, and equity. At an earlier point in time, courts of equity stood separately, and settled matters primarily based on what was just under the facts of a case. Equitable decision-making sought to preserve the status quo, to level the playing field, or to achieve fairness in the parties' dealings with one another. Common law developed in the courts of law, and was reflected in the rulings of those courts. Eventually, at least in most states, the courts of equity and law were combined, giving those courts jurisdiction over both kinds of cases.

■ Modern jurisprudence is first a creature of the governing constitutions, then of code (statutes), and of case law precedent. To the extent the courts are given rule-making authority, those rules are also binding. Equity practice, in general, is merged with law, or the statutory provisions. Only when there is no law or precedent does a court have the authority to exercise pure equity. *Cf. Vittitow v. Keene,* 265 Ky. 66, 95 S.W.2d 1083, 1084 (1936) ("[E]quity principles ... cannot be given effect, nor may they be resorted to when to do so would be in direct conflict with settled legislatively enacted rules of practice approved and followed by courts of equity from an ancient day to the present time."). Thus, "the equity powers of the courts have definite limits." *Barger v. Ward,* 407 S.W.2d 397, 400 (Ky.1966).

■ The "inherent" power of a court is defined by the constitutional grant that divides the powers of government among the executive, legislative and judicial branches. Those powers are separate, offering checks and balances to each branch of government so that one may not predominate over the others. If a power is given to another branch of government, the courts cannot usurp it, and likewise for the other branches. By the same token, if the state high court has established a rule of law in its case holdings or through its rule-making authority, a lower court cannot depart from it.

■ Equity is only a supplement to the law for when there is no remedy at law. But it is a simple tenet that if there *is* a statute or case precedent or rule going a

certain way, a trial court may not depart from it on the basis of equity. Law trumps equity. *See S.J.L.S. v. T.L.S.,* 265 S.W.3d 804, 820 (Ky.App.2008) ("It is well settled that equitable considerations and estoppel cannot be permitted to prevail when in conflict with positive written law." (quoting *Louisiana State Troopers Ass'n., Inc. v. Louisiana State Police Retirement Bd.,* 417 So.2d 440, 445 (La.Ct.App.1982))).

. That is the case here. On the question of awarding attorney's fees, the trial court decided to award them to the Appellant based on what it deemed to be egregious conduct by the Cabinet. This is clearly an equity ruling based on what the trial court thought was right. The problem is that attorney's fees in Kentucky are not awarded as costs to the prevailing party unless there is a statute permitting it or as a term of a contractual agreement between the parties. They may also be awarded as a *sanction* but only under limited circumstances.

Petitioner has argued that there is a statute allowing him attorney's fees in this case. He cites KRS 433.010, which begins by saying "No judgment for costs shall be rendered against the Commonwealth" but does allow an exception for costs in a civil suit where "the costs may be paid by the Commonwealth when such costs are approved and allowed by the judge of the court in which the case was filed." This, he argues, gave the trial court authority to order attorney's fees.

But Appellant's first problem is that attorney's fees are not "costs" as that term is defined in Kentucky law, unless the fees are granted by statute or contract. *See Dulworth & Burress Tobacco Warehouse Co. v. Burress,* 369 S.W.2d 129, 133 (Ky.1963) ("As a general rule, ... in the absence of a statute or contract expressly providing therefor, attorneys' fees are not allowable as costs."). He cites no other statute specifying that attorney's fees in this case are legal costs or that they may be awarded otherwise, and no contract term that would allow such fees. Thus, because attorney's fees are not costs as referenced by the statute, the discretion of the court to determine and grant costs is not invoked.

Secondly, the language of the statute makes the payment of costs discretionary with the government by use of the term "may." *See Department of Revenue v. D & W Auto Supply, Inc.,* 614 S.W.2d 542 (Ky.App.1981) ("We see no ambiguity in this statute. It simply says that costs shall not be imposed upon the Commonwealth by judgment."), *overruled in part on other grounds by Commonwealth, Natural Resources and Environmental Protection Cabinet v. Stearns Coal and Lumber Co.,* 678 S.W.2d 378 (Ky.1984). At times, the government may agree to pay costs in an action, which would then allow the court to approve and allow the specific costs claimed. *See id.* ("Even though costs cannot be assessed against the Commonwealth by judgment, the Commonwealth, if it desires to do so, is authorized to pay costs which have been approved and allowed by the trial judge. The provision which authorizes the Commonwealth to assume the burden of costs in certain cases does not require the Commonwealth to assume that burden and does not authorize the imposition of such costs by judgment."). The Cabinet has clearly not agreed to pay *any* costs in this action, and certainly not attorney's fees.

There is thus neither a statutory nor contractual basis to award, attorney's fees in this case.

This brings us to the question of whether attorney's fees can be awarded as a sanction in this case, in reference to the trial court's view that the Cabinet's

conduct was "egregious." It is true that there are some instances in our case law where attorney's fees have been awarded and approved on appeal. However, the only appropriate award of attorney's fees as a sanction comes when the very integrity of the *court* is in issue. To that end, attorney's fees may be awarded under Civil Rule 11 for filing pleadings that are not "well grounded in fact," not "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law," or that are filed for "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Attorney's fees may also be ordered under Civil Rule 37.02 for failing to comply with a court order. Likewise, attorney's fees may be awarded in a contempt action, because the conduct undermined the authority of the court. *See Kentucky Retirement Systems v. Foster*, 338 S.W.3d 788, 803 (Ky.App.2010). In these instances where attorney's fees are appropriate as a sanction, it is not for the benefit of the individual plaintiff, but because there has been an intrusion on the very power of the court. Any cases to the contrary are misguided,[1] for only in this narrow use to support the integrity of the court may attorney's fees be awarded without subverting the "American Rule" of not awarding attorney's fees as costs.

The integrity of the court is not in question here. And, this is not a case seeking some kind of injunctive relief that could lead to contempt proceedings. Instead, the trial court sought to award attorney's fees to the Appellant for what it perceived as the Cabinet's "egregious" behavior in charging a co-payment contrary to the requirements of the Pickle Amendment.

While the court may have felt that application of the amendment was very clear, and while the Cabinet may have acquiesced to the court's ruling in this case, there has been no appellate decision that the trial court's analysis is correct. Thus that decision is the law only in this case. And, even if it is technically correct, it is difficult to see that the Cabinet's conduct was egregious given that it followed the language of the statute as written. The language of the Pickle Amendment references residential treatment, not community-based treatment. And, while the lower court's reasoning that the amendment also applies to home-based programs may be correct, there is certainly nothing egregious about the Cabinet not reading terms into a statute that are not there. The final word on that matter rests with the courts.

Instead, it appears that what the court actually found to be egregious was requiring a truly poor person, of limited capability, to pay for part of her care. Indeed, that is a worrisome situation, and the court cannot be faulted for its sympathy. But the legal question before the court was whether it had the authority to order the Cabinet to pay attorney's fees to the petitioner in this case. In assuming that it had the equitable or inherent power to do so, it was in error.

---

1. The notion that equity alone allows a trial court the discretion to award attorney's fees appears in only one of this Court's precedents, *Dorman v. Baumlisberger*, 271 Ky. 806, 113 S.W.2d 432, 433 (1938) ("In equity the award of costs and fees is largely within the discretion of the court, depending on the facts and circumstances of each particular case."). That decision has been cited but a single time by a majority opinion of this Court or its predecessor, and never for the broad proposition that attorney's fees can be awarded at the trial court's discretion under the guise of equity. In fact, the language from *Dorman* suggesting such a rule only does so when taken out of context from a discussion about trust funds and whether they could be used to pay fees and costs, which is not the case here.

If courts truly had equitable or inherent powers as broad as those assumed by the trial court, the American Rule regarding attorney's fees as costs would be obliterated. As the above discussion shows, reasonable minds can differ widely on what is "equitable." Without reasonable limits on the court's powers, the authority of the other branches of government could be indiscriminately invaded. Power is given to the legislature to grant attorney's fees by statute. The parties may contract in advance of litigation to pay attorney's fees should litigation occur. The court may protect the integrity of the court by an attorney's fee sanction. But trial courts may not award attorney's fees just because they think it is the right thing to do in a given case. That is not what the law of Kentucky allows, and their inherent powers do not extend beyond stated law. In other words, a trial court may not ignore the law and apply its will, no matter how sound it believes the reason to be. This obviously would create legal chaos.

Consequently, the Court of Appeals' reversal of the award of attorney's fees is affirmed.

## B. Disclosure of information on other program participants

The Appellant also sought and got a court order requiring the Cabinet to disclose detailed information about all other similarly situated participants in the DCBS program in which Mary participated. The court noted that there were legitimate privacy concerns, but stated that it was "the cold hard truth that many of these patients will have no chance for redress of the Cabinet's arbitrary position if the Court does not order it to produce certain records." Specifically, the court ordered the Cabinet to produce identity and contact information for all persons receiving RSDI benefits who were in the Home Community Based Waiver program and were being charged a co-pay.

While a trial court does have broad discretion in granting discovery requests, this was not an *appropriate* discovery request. First, this information had no bearing on the Appellant's claim, not being relevant to her situation. But most importantly, her claim had already been adjudicated, and she had *prevailed*. Indeed, to that extent, the request was not even a discovery request.

Rather, the claim was more like a request for mandatory injunctive relief, as it would have required the Cabinet to do some act. But to obtain such relief, a party must "show harm to [her] rights," and more importantly, a "possible abrogation of a concrete personal right." *Maupin v. Stansbury,* 575 S.W.2d 695, 698 (Ky.App.1978). While the Appellant has not literally sought an injunction, the principle "that some substantial claim to a personal right must be alleged" by a party is part of the basic law of standing. *Id.* The records of other people had nothing to do with her claim. Thus, the Appellant simply did not have standing to pursue the information relating to other people in the program. None of the information sought could advance her claim, as she had already won on the merits. In fact, the only purpose for this disclosure was to "expose" the Cabinet, and simply would have invited more litigation *by other parties.*

Obtaining such evidence in the course of discovery of a class-action claim against the Cabinet might be justified. But this was *not* a class-action suit, having none of the appropriate mechanisms of a class action in place. The Appellant did not purport to be representative of anybody but herself. This disclosure was at best gratuitous.

And no one with standing to seek it had sought any kind of injunctive relief. Indeed, the correctness of the trial court's underlying merits ruling has not been decided as it relates to other cases, because there has been no appellate review. A trial court's decision has "no precedential value." *Courier–Journal v. Jones,* 895 S.W.2d 6, 7 (Ky.App.1995); *see also* SCR 1.040 (requiring trial courts to follow Supreme Court and Court of Appeals precedent, but not mentioning trial court opinions). Such a decision can have effect outside its originating case only under the doctrines of *res judicata* and collateral estoppel, which are not at issue here, since no party with standing invoked its rights to those records. A trial court simply cannot usurp the role of appropriate appellate review and orderly civil process, and proceed as if its decision in one unappealed case applies in actions that have not even been filed.

And finally, the privacy interests of the parties to be disclosed were not properly considered, as said parties were not before the court and had no opportunity to object to the disclosure. Federal law requires that the Cabinet protect the information of the participants in its programs. *See, e.g.,* 42 U.S.C.A. § 1396a(7) (requiring "safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with … administration of the plan" and information exchanges not at issue here). State law also limits disclosure of the records. *See* KRS 205.175.[2]

Clearly, the trial court had legitimate concerns for other program participants given its view of the law of the case and of the Cabinet's conduct. But no matter how well-intended, a trial court may not exceed its authority to accomplish even a worthy purpose. The trial court could not lawfully order disclosure of the records of other people served by the Cabinet in this case. Consequently, the Court of Appeals' reversal of the disclosure request is affirmed.

### III. Conclusion

For the reasons stated above, the Court of Appeals is affirmed.

All sitting. All concur.

---

2. Interestingly, that statute does allow disclosure of "necessary information and records" to "[a]ny interested party at a hearing before the secretary or his duly authorized representative to the extent necessary for the proper presentation of his case." KRS 205.175(2)(d). But this further supports the standing conclusion above, since records the Appellant sought did not pertain to her case.