RENDERED:  JANUARY 15, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0782-MR

HASSEN ELMI; ABDULAHI     APPELLANTS
HUSSEIN, A MINOR, BY HASSEN
ELMI AS NATURAL FATHER AND
NEXT FRIEND; FADUMO
MOHAMED; HALIMO HUSSEIN;
NADER GEORGE SHUNNARAH;
RUWEDYN HUSSEIN; AND
SOKOREY HUSSEIN


               APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE OLU A. STEVENS, JUDGE
                ACTION NO. 17-CI-000385


NEURO-ORTHO ASSOCIATES         APPELLEE


OPINION
REVERSING AND
REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

COMBS, JUDGE:  Nader George Shunnarah, a Louisville attorney, appeals a

judgment on the pleadings granted on May 1, 2019, by the Jefferson Circuit Court

to Neuro-Ortho Associates (Neuro-Ortho). Shunnarah appeals the circuit court's award to Neuro-Ortho of its attorney's fees in the amount of $13,500.00 and interest on the judgment at 6% from April 9, 2015, through November 5, 2018. After our review, we reverse and remand.

This matter is essentially a medical services billing dispute. However, Neuro-Ortho's decision to bring a civil action against its patients' attorney has complicated the matter.

Shunnarah represented Hassen Elmi, Fadumo Mohamed, Halimo Hussein, Sokorey Hussein, Ruwedyn Hussein, and Abdulahi Hussein (referred to collectively as "the insureds") in a personal injury action against Asho Omar and State Farm Fire and Casualty Insurance Company ("State Farm"). The action was filed after a car driven by Omar on January 23, 2015, struck an apartment building causing the insureds to suffer personal injuries.

Neuro-Ortho provided medical care and treatment to Hassen Elmi, Halimo Hussein, and Sokorey Hussein from January 26 through April 9, 2015, resulting in fees of $8,763.00; $7,100.00; and $7,130.00, respectively; to Fadumo Mohamed from January 26 through April 21, 2015, resulting in a fee of $9,703.00; and to Ruwedyn Hussein and Abdulahi Hussein from January 26, through April 23, 2015, resulting in fees of $5,075.00 and $5,215.00, respectively. Together, the

medical bills totalled nearly $43,000.00. Neuro-Ortho submitted its billing statements for the treatment of the insureds to State Farm for payment.

In mid-February 2015, Neuro-Ortho was made aware by State Farm that payment for its services had been directed to the insureds' attorney. Consequently, State Farm made no payments to Neuro-Ortho for the medical care and treatment provided to the insureds.

On July 6, 2016, Shunnarah filed a personal injury action against Omar and State Farm on behalf of the insureds. Shortly thereafter, Neuro-Ortho received correspondence from Shunnarah indicating that the insureds were challenging Neuro-Ortho's billing statements. Shunnarah explained that the care and treatment provided by Neuro-Ortho "may not have been medically necessary" and may have been provided "in violation of chiropractic standards." Shunnarah indicated that the "procedure you follow having a potential criminal [*sic*] make the referral to your company through an attorney, picking upon the patients, recommending treatment to exhaust the PIP coverage is in question." He explained that other medical providers needed to be paid, and Elmi had lost wages which had to come from the no-fault coverage as well. Finally, Shunnarah indicated that he would "mostly likely" depose the medical providers so that they could "explain these issues."

Neuro-Ortho responded immediately. It rejected Shunnarah's insinuations and stated that it was not "interested in collecting anything on these cases, if criminal nexus is established between the attorney that referred these cases to us, his referral source, and ultimately your procurement of these clients." A series of unpleasant exchanges continued, and in correspondence dated July 12, 2016, Shunnarah indicated to Neuro-Ortho that he could no longer engage in verbal communication. The insureds' claims against Omar and State Farm were settled.

In October 2016, Neuro-Ortho corresponded again with Shunnarah "welcom[ing] any contact you may want to establish to negotiate balances without disparaging our practice. . . ." Neuro-Ortho requested that Shunnarah release to it the non-fault benefits received from State Farm for the insureds' benefit or explain the basis upon which they were being withheld.

In November 2016, Neuro-Ortho's counsel corresponded with Shunnarah warning that if payment were not forthcoming, it would pursue a debt collection action against the insureds. Shunnarah responded days later. He explained that State Farm had provided to him "a statement Neural(sic)-Ortho overcharged my client over $12,000.00 dollars." Records indicate that State Farm declined to reimburse the insureds for approximately $13,400.00 in medical bills submitted by Neuro-Ortho on various grounds, including: nonspecific coding

entries; submission of duplicate coded entries; and entries for services provided where the treating physician had reduced or eliminated the need for the care or treatment. As a result, Shunnarah intended to "submit his bills and medical records for peer review." He anticipated having a response in 60 to 90 days.

When the medical bills were not paid by January 23, 2017, Neuro-Ortho filed the civil action underlying this appeal against Shunnarah and State Farm. It did not file a collections action against the insureds.

In its complaint, Neuro-Ortho provided an account of each patient's medical bills and alleged that Shunnarah had converted the insureds' no-fault benefits received from State Farm to his own use. It also alleged that Shunnarah had committed fraud and misrepresentation by assuring State Farm that payment would be made for the medical care and treatment afforded the insureds; by assigning the insureds' no-fault benefits to himself with no intention of paying their medical bills; and by using his position as a lawyer to direct State Farm to send the insureds' no-fault benefits to himself. Neuro-Ortho alleged that despite its legal obligation to pay no-fault benefits to the care providers, State Farm had negligently made the benefits payable to Shunnarah, who wrongfully withheld them.

Sunnarah answered the complaint. In his answer, Sunnarah explained that State Farm had paid approximately $30,000.00 (actually $32,562.19) in basic

reparation benefits based upon the medical bills submitted by Neuro-Ortho (totaling $42,986.00) and that Neuro-Ortho had "refused to accept payment for the amount that State Farm provided." Sunnarah filed a counterclaim alleging that Neuro-Ortho had attempted to extort money from him by threatening to file a complaint against him with the Kentucky Bar Association; attempted to practice a theft by deception by trying to collect the outstanding medical bills; engaged in insurance fraud and wrongful use of civil proceedings; and negligently breached its duty of good faith and fair dealing with respect to his clients.

Based upon State Farm's payout of the disputed no-fault benefits, State Farm was dismissed from the action by way of an agreed order filed on June 22, 2017. Neuro-Ortho filed a motion for judgment on the pleadings.

The insureds filed a motion to intervene. In their 50-page complaint, each of the intervening plaintiffs alleged a cause of action against Neuro-Ortho based upon the alleged attempted extortion perpetrated against Shunnarah by Neuro-Ortho when it threatened to file a bar complaint against him. They also alleged that they had suffered injuries and incurred damages as a result of Neuro-Ortho's alleged theft by deception, insurance fraud, intentional misrepresentation, negligent misrepresentation, negligence, and violation of Kentucky's Consumer Protection Act -- all arising from Neuro-Ortho's alleged over-billing for their medical treatment. The motion to intervene was granted.

Neuro-Ortho filed its answer to Sunnarah's complaint. In its answer, Neuro-Ortho indicated that it lacked sufficient information to form a belief as to Sunnarah's allegation that State Farm had not paid out sufficient no-fault benefits to cover the full amount of the outstanding balance of the medical bills submitted by Neuro-Ortho. It denied the other allegations.

Neuro-Ortho also answered and denied the allegations included in the intervening complaint, and it filed a motion for summary judgment. Neuro-Ortho challenged the attempted extortion and theft by deception allegations on the basis that it had merely attempted to collect a debt. It also denied that the intervening plaintiffs had any interest in the complaint it filed against Shunnarah. Neuro-Ortho argued that it had not over-billed for services and included the affidavit of Dr. Robert W. Byrd, which indicated that the medical treatment provided was necessary and that its cost was reasonable.

In August 2017, Neuro-Ortho filed a motion pursuant to provisions of the Kentucky Rules of Civil Procedure (CR) requesting that the sums held by Shunnarah -- $32,562.19 -- be paid into court. CR 67.02. By order entered on December 1, 2017, Sunnarah was directed to deposit into a court-appointed, interest-bearing bank account the no-fault benefits paid over to him by State Farm on behalf of the insureds. Nearly a year later, Neuro-Ortho filed a motion requesting the court release those funds because the parties agreed that the funds

represented the amount owed to Neuro-Ortho for services rendered. The funds were promptly released to Neuro-Ortho.

On January 8, 2019, summary judgment was entered against the insureds with respect to their claims, and Neuro-Ortho renewed its motion for judgment on the pleadings with respect to its claims against Shunnarah. Shunnarah filed a motion for summary judgment.

In an order entered on May 1, 2019, the circuit court granted judgment on the pleadings to Neuro-Ortho and dismissed with prejudice all the claims asserted against Neuro-Ortho by Shunnarah and the intervening plaintiffs. Shunnarah was ordered to pay attorney's fees in the amount of $13,500.00; interest on the debt at 6% from April 9, 2015, through November 5, 2018; and court costs. This appeal followed.

Shunnarah argues that the circuit court erred by awarding attorney's fees, interest, and costs. He does not challenge the release to Neuro-Ortho of the funds that he had paid into court. Neuro-Ortho contends that the appeal must be dismissed because of Shunnarah's failure to name State Farm as an appellee. Neuro-Ortho believes that State Farm is necessary to the appeal because Shunnarah characterized it in his brief as an indispensable party to the proceedings below.

Shunnarah did not argue in his brief that State Farm is an indispensable party on appeal. On the contrary, he argues that because State Farm

had already disbursed $32,562.19 in no-fault benefits in response to the medical bills submitted by Neuro-Ortho, it is not a necessary party to these proceedings.

A notice of appeal transfers jurisdiction of only the named parties to the Court. *City of Devondale v. Stallings*, 795 S.W.2d 954. 957 (Ky. 1990). Where judgment is entered in favor of multiple parties, each of those parties becomes a potential appellee. The appellant is not required to name them all, but he is required to name each party that is "necessary" to an adequate review and a proper disposition of the appeal. The Supreme Court of Kentucky announced in *Kesler v. Shehan*, 934 S.W.2d 254, 257 (Ky. 1996), that "a person is a necessary party if the person would be a necessary party for further proceedings in the circuit court if the judgment were reversed." Such persons are "regarded as indispensable[,]" because without them, disposition could prejudice the absent person "or those already parties[.]" CR 19.02; *West v. Goldstein*, 830 S.W.2d 379, 382 (Ky. 1992) ("The true meaning of 'all necessary parties,' [is] those persons whose interest would be divested by an adverse judgment.").

Although State Farm was included as a defendant in the action filed by Neuro-Ortho, it had already been dismissed from the action by agreement of the parties when the circuit court entered judgment in favor of Neuro-Ortho. No part of our review is hindered by its absence, and State Farm would not be a necessary party in any further proceedings in the circuit court if we reversed the judgment.

Relief -- if any -- granted to Shunnarah would not involve State Farm. Consequently, State Farm is not a necessary party to this appeal. Dismissal of the appeal on this basis is not appropriate.

Shunnarah argues that the circuit court erred by granting judgment on the pleadings that included an award for attorney's fees, interest, and costs. We agree.

Although Neuro-Ortho presented the insureds' medical bills to State Farm, it had no direct right to satisfy any part of its bills from the insureds' no-fault benefits. *See Neurodiagnostics, Inc. v. Kentucky Farm Bureau Mut. Ins. Co.*, 250 S.W.3d 321 (Ky. 2008). The disbursement of no-fault benefits by an insurer is subject to statutory restrictions on their use. KRS[1] 304.39-040; KRS 304.39-020(5); *see also Medlin v. Progressive Direct Ins. Co.*, 419 S.W.3d 60 (Ky. App. 2013). However, within the statutory parameters governing their use, injured insureds are *expressly entitled to direct* how their no-fault benefits are to be paid out. *See* KRS 304.39-241. Despite Neuro-Ortho's strong objection, an attorney's management of his clients' no-fault benefits pursuant to these provisions is both lawful and ethical. *See Hughes and Coleman, PLLC v. Chambers*, 526 S.W.3d 70 (Ky. 2017). "Indeed, that practice seems almost integral to fully servicing a motor-vehicle personal-injury client's needs—it should be commended and

---

[1] Kentucky Revised Statutes.

-10-

encouraged. . . ." *Id.* at 77. Under the circumstances outlined above, Neuro-Ortho had no viable claim against Shunnarah for his refusal to turn over the insureds' no-fault benefits upon demand of the care providers. Consequently, the circuit court erred by granting a judgment on the pleadings in favor of Neuro-Ortho that resulted in an award of attorney's fees, interest, and costs.

We also note that Neuro-Ortho would not have been entitled to an award of its attorney's fees in any event. In Kentucky, attorney's fees are not generally awarded to a prevailing party unless authorized by the provisions of a statute or provided for under the terms of a contract. *Bell v. Commonwealth*, 423 S.W.3d 742 (Ky. 2014). However, Neuro-Ortho contends that an award of attorney's fees is appropriate in this case because it had a private right of action against Shunnarah under both our Unfair Claims Settlement Practices Act and our Motor Vehicle Reparations Act.

The provisions of our Unfair Claims Settlement Practices Act upon which Neuro-Ortho rely impose a duty of good faith and fair dealing upon an insurer to an insured. KRS 304.12-230; *see also Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512 (Ky. 2006). The cited provisions of our Motor Vehicle Reparations Act explain the legislature's intention to encourage prompt medical treatment of victims of motor vehicle accidents by providing for prompt payment of the cost of medical care; providing for the payment of interest in certain situations; and

awarding attorney's fees to an insured if an insurance company fails to pay basic reparation benefits on a timely basis. KRS 304.39-010(3); KRS 304.39-220. Although none of these provisions governs Shunnarah's obligations or his conduct in this case, Neuro-Ortho argues that the provisions supply the basis for a private right of action against him under KRS 446.070 and that an award of its attorney's fees is thereby authorized.

The circuit court's award of attorney's fees could not be affirmed on this basis. KRS 446.070 permits "[a] person injured by the violation of any statute" to sue for "such damages as he sustained by reason of the violation. . . ." The provision applies "only if the alleged offender has violated a statute and the plaintiff was in the class of persons which that statute was intended to protect." *Ford v. Fuller*, 439 S.W.3d 173, 177 (Ky. App. 2014) (quoting *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000)).

In its complaint, Neuro-Ortho did not seek damages under the provisions of KRS 446.070 for Shunnarah's violation of any part of the Unfair Claims Settlement Practices Act or the Motor Vehicle Reparations Act. Neuro-Ortho's civil action included only a claim for conversion and allegations that Shunnarah had committed fraud and misrepresentation by convincing State Farm to direct the payment of no-fault benefits to him. These common law claims do not encompass an award for attorney's fees.

Nor would an award be justified upon principles of equity. In *Seeger v. Lanham*, 542 S.W.3d 286 (Ky. 2018), the Supreme Court of Kentucky held specifically that a circuit court does not have any power in equity to award attorney's fees. Consequently, in the absence of a contractual or statutory basis, attorney's fees may only be awarded as a sanction. *Id.* at 295. An award of attorney's fees as a sanction is appropriate only where the integrity of the court is at issue. *Id.*

Where attorney's fees are appropriate as a sanction, such a result is not for the benefit of the individual plaintiff but rather is due to the fact that there has been an affront to the authority of the court. *Bell, supra.* For example, attorney's fees may be awarded under CR 11 where a pleading has been filed for an improper purpose; under CR 37.02 for failing to comply with a court order; and in a contempt action because the conduct undermined the authority of the court. *Id.* The integrity of the court was not in question in this case, and the award of attorney's fees could not be affirmed on that basis.

Therefore, we are compelled to REVERSE the judgment of the Jefferson Circuit Court and to REMAND this case for entry of an order consistent with our Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Greg Butram
Louisville, Kentucky

Nader George Shunnarah
Louisville, Kentucky

BRIEF FOR APPELLEE:

Grover S. Cox
Louisville, Kentucky