RENDERED: JANUARY 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0840-MR

BETTY BALDWIN APPELLANT

v. APPEAL FROM CALLOWAY CIRCUIT COURT
HONORABLE JAMES T. JAMESON, JUDGE
ACTION NO. 20-CI-00092

KENTUCKY NATIONAL
INSURANCE COMPANY; AND
HOLTON, MELUGIN AND
HAVERSTOCK INSURANCE
AGENCY, INC., D/B/A
HAVERSTOCK INSURANCE
AGENCY, INC. APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Betty Baldwin brings this appeal from a June 21, 2022,

summary judgment of the Calloway Circuit Court in favor of Kentucky National

Insurance Agency (KNIC) and Holton, Melugin, and Haverstock Insurance

Agency, Inc., d/b/a Haverstock Insurance Agency, Inc. (Haverstock). We affirm in part, reverse in part, and remand.

This appeal involves the denial of insurance coverage to Baldwin relating to the total loss of her home by fire in October of 2019. The circuit court summarized the facts as follows:

1. It is undisputed that Betty Baldwin, hereinafter "Baldwin," incurred a fire loss in 1994. Baldwin received approximately $90,000 in insurance proceeds as a result of that fire. Baldwin rebuilt the existing structure damaged by fire. The new structure was a two-story home. Baldwin lived in this home until October 13, 2019.

2. On or about 2012, according to Baldwin's Complaint in Calloway 20-CI-00120, Baldwin purchased homeowner insurance for the above-described home from American Commerce through Holton, Melugin and Haverstock Insurance Agency, Inc., d/b/a Haverstock Insurance Agency Inc., hereinafter "Haverstock." Specifically, Baldwin interacted with Van Haverstock.

3. Van Haverstock is an agent for multiple insurance companies, including American Commerce and Kentucky National Insurance Company.

4. Prior to procuring insurance through American Commerce, Baldwin called [Van] Haverstock due to her relationship with Haverstock's brother, Gary Haverstock. Shortly after the initial call, [Van] Haverstock went to Baldwin's home and performed an inspection of the premises. Baldwin's brother, Jerry Davidson, was the only individual present at the home during the inspection. Neither Baldwin nor her husband were present.

5. Defendant had homeowner insurance from American Commerce until approximately November of 2017.

6. On or about 2017, Baldwin called [Van] Haverstock. Baldwin asked Haverstock to look into cheaper options for homeowner insurance. [Van] Haverstock did not perform any inspections or present questions to Baldwin regarding a new application for homeowner insurance.

7. On or about November 21, 2017, Baldwin received a phone call from "Betsy" at Haverstock. Betsy advised Baldwin that she needed to come to the office and sign her application. On November 21, 2017, Baldwin appeared at Haverstock's office to sign the application. The secretary presented the application for homeowner's insurance to Baldwin in the reception area of the office. The secretary instructed Baldwin on where her signature was needed. Without reading, Baldwin signed the application. The application was dated November 21, 2017. Baldwin was not denied an opportunity to review the application before signing.

8. According to Baldwin in her deposition on September 14, 2021, two of the answers provided on the application were incorrect at the time of signing. Baldwin indicated in Question 28 that she did not specifically have a German Shepperd [sic]. Further, Baldwin in Question 32 indicated that she had never had a prior fire loss. *See Attached Kentucky Homeowners Application*.

9. Sometime after signing the Kentucky Homeowner Application, Baldwin purchased a homeowner insurance policy through Kentucky National Insurance Company.

10. On October 13, 2019, a fire occurred and resulted in a total loss of the above-described home.

11. On March 5, 2020, after denying Baldwin's coverage, Kentucky National Insurance Company (hereinafter "KNI") filed a Complaint for Declaration of Rights and Monetary Damages arising from the house fire on October 13, 2019.

12. On March 26, 2020, Baldwin answered KNI's complaint and filed her own counterclaims.

13. On March 26, 2020, Baldwin filed a separate action (Calloway Circuit 20-CI-00120) against Haverstock. Baldwin claimed that Haverstock was liable for the damages incurred by Baldwin which were caused by the representations of [Van] Haverstock.

14. On June 18, 2020, this case was consolidated with 20-CI-00120. Third-Party Defendant, Holton, Melugin and Haverstock Insurance Agency, Inc., d/b/a Haverstock Insurance Agency, Inc., was joined because of the similarity in basic facts and circumstances.

Order on Summary Judgment at 1-3.

On March 10, 2022, KNIC filed a motion for summary judgment. KNIC alleged that Baldwin signed the application for insurance with KNIC and that the application contained two misrepresentations. According to KNIC, Baldwin answered in the negative as to whether she had any fire losses in the past and as to whether she owned a German Shepherd dog; however, KNIC pointed out that Baldwin had a prior fire loss to her home in 1994 and owned a German

-4-

Shepherd dog.[1]  Because of these misrepresentations in the application, KNIC maintained that it was permitted to rescind the homeowner's insurance policy pursuant to Kentucky Revised Statutes (KRS) 304.14-110 and *Hornback v. Bankers Life Insurance Company*, 176 S.W.3d 699 (Ky. App. 2005).  Haverstock joined in KNIC's motion for summary judgment and sought summary judgment in its favor.

Baldwin filed a response and argued that she did not make the misrepresentations in the application.  Rather, Baldwin asserted that Van Haverstock or an employee under his direction completed the application, and she merely signed same without reading it.  Baldwin also alleged that Van Haverstock knew that her prior home was destroyed by fire and that she owned a German Shepherd dog but negligently completed the application.  As Van Haverstock was an agent of KNIC, Baldwin maintains that KNIC was estopped from rescinding coverage and/or that Haverstock was liable for Van Haverstock's negligence.

On June 21, 2022, the circuit court rendered summary judgment in favor of KNIC and Haverstock.  In so doing, the circuit court reasoned:

> Plaintiff, in their renewed and second motion for
> summary judgment, argues that *Hornback v. Bankers*

---

[1] The record reflects that due to the 1994 fire loss, Betty Baldwin's insurance company paid $90,000 on the claim.  Additionally, the parties acknowledged at oral argument that the dog was not involved in causing the fire.  Thus, the representation regarding the dog was not material to Baldwin's fire loss claim in 2019.

*Life Insurance Company*, 176 S.W.3d 699 (Ky. Ct. App. 2005) is controlling in the matter *sub judice* based on the facts and circumstances presented *supra*. This Court agrees. . . .

The application process in *Hornback* is similar to the application process in the matter *sub judice*, though not identical. However, the outcome remains the same. In *Hornback*, Garrett, an employee of AMI and an agent of the insurer, renewed the application with the Hornbacks. The employee read the questions and completed the application based on the answers they supplied. After completing the application, the employee asked the Hornbacks to sign it. The Hornbacks testified that they were hurried and did not read the application before singing it. The Hornbacks further acknowledged that no one prevented them from either reading the form or filling out the answers themselves.

In the matter *sub judice*, some conversations were had between Baldwin and [Van] Haverstock. These conversations were held telephonically. [Van] Haverstock, on one occasion, visited and inspected the premises. [Van] Haverstock, after the inspection, completed an application for homeowner's insurance through American Commerce in approximately 2012. Baldwin eventually purchased a policy through American Commerce. A few years later, in 2017, Baldwin sought a new, cheaper policy. The record reflects that Haverstock used information from Baldwin's prior application for American Commerce to complete the new application for Plaintiff, Kentucky National Insurance Company. At no point, as the record reflects, did Haverstock direct new questions to Baldwin regarding her new policy. Once instructed to appear at Haverstock's office to sign the application, Baldwin complied. Baldwin was not precluded from reviewing the application or altering answers contained therein. Most importantly, Baldwin did not correct the answers provided in Questions 28 and

-6-

32 – i.e., German Shepherd ownership and prior fire losses.

    . . . .

Dating back to at least 1945, Kentucky Courts have long held that the statements written in applications for insurance coverage by a local agent, signed [by] the applicant without reading the contents therein, were actually or constructively known to the applicant and that "she may not thereafter repudiate the answers in the application and recover on the policy." *Commonwealth Life Ins. Co. v. Bruner*, 299 Ky. 335, 185 S.W. 2d 408 (1945). *See also Reserve Life Ins. Co. v. Thomas*, 310 S.W. 2d 267, 269-70 (Ky. 1958). Here, it is undisputed that Baldwin did not read the application before signing it. Immediately above Baldwin's Signature is the following language:

"I have read the entire application and I warrant that to the best of my knowledge and belief all of the statements made herein are true. I understand that this application is part of my policy contract. I understand if any check or credit card offered in payment is not honored by my bank or credit card company, the Company shall be deemed not to have accepted the check or credit card, and the policy shall be deemed void from inception and I will be charged a processing fee."

Thus, Baldwin by affixing her signature to the document, represented to Kentucky National Insurance Company that all statements were true. Baldwin represented to Kentucky National Insurance Company that she did not own a German Shepherd, a prohibited dog breed. Further, Baldwin represented that she had no prior fire losses. In fact, it is undisputed that Baldwin received approximately $90,000.00 in insurance proceeds following a fire in 1994. Therefore, it is impossible for this Court to conclude anything other than that Baldwin made misrepresentations that were material to the insurer's acceptance of the risk and that there is no

-7-

genuine issue of material fact in this regard. Thus, it would be impossible for Baldwin to produce evidence at trial that would result in a judgment in her favor. This Court concludes that Kentucky National Insurance Company is entitled to judgment, as a matter of law.

Baldwin filed an original action against Haverstock for damages, in excess of the minimum jurisdictional limits of this Court, sustained by reason of the failure of Haverstock to properly and correctly answer the questions in the application for insurance with Kentucky National Insurance Company. The Court concludes that Hornback, again, is controlling. . . . There is no dispute in both matters that an agent or an employee of the agent for the insurer filled out the application in its entirety. In both instances, the insureds never read the application. Further, the insureds in both matters were not prevented from reading the application and making alterations. The Court in *Hornback* concluded, "as a matter of law, that the Hornbacks adopted and were responsible for the answers when they signed the application. Thus, regardless of what disclosures were made to Garrett, the responsibility for the answers rests solely with the Hornbacks. Under these circumstances, Garrett and AMI were, as a matter of law, entitled to a judgment in their favor." *Id.* at 704. Thus, this Court can only conclude that, when renewing the record in a light most favorable to Baldwin, there is no genuine issue of material fact, and, as a matter of law, Haverstock is entitled to a judgment in his favor because it would be impossible for Baldwin to produce evidence at trial that would produce a judgment in her favor.

Order on Summary Judgment at 4-7. The circuit court also awarded KNIC "costs, fees, expenses and attorney's fees." Order on Summary Judgment at 8. This appeal follows.

-8-

To begin, summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). All facts and inferences therefrom are to be viewed in a light most favorable to the nonmoving party. *Seiller Waterman, LLC v. Bardstown Cap. Corp.*, 643 S.W.3d 68, 74 (Ky. 2022). Additionally, this Court's review of a summary judgment is always *de novo*. *Id.* at 74; *Cunningham v. Kroger Ltd. P'ship I*, 651 S.W.3d 199, 202 (Ky. App. 2022).

Baldwin asserts that the circuit court erred by rendering summary judgment in favor of KNIC. In particular, Baldwin argues that KNIC was estopped from denying coverage and rescinding her homeowner's insurance policy. According to Baldwin, Van Haverstock or an employee under his direction filled out the application in its entirety, and she merely signed the application after being contacted to do so. Baldwin asserts that Van Haverstock or his employee incorrectly answered the questions in the application despite knowing that she owned a German Shepherd dog and that she had previously sustained a major fire to her home. Baldwin claims that Van Haverstock was KNIC's agent, and KNIC should be estopped from rescinding her homeowner's insurance policy.

In a strikingly similar case in 2005, this Court recognized that an applicant who signs an insurance application is on constructive notice of its

contents and is singularly responsible for the information contained therein.

*Hornback*, 176 S.W.3d at 704.  Therein, the Court held:

> The court faced a similar situation in *Commonwealth Life Ins. Co. v. Bruner*, 299 Ky. 335, 185 S.W.2d 408 (1945).  Therein, the applicant on a life insurance policy made false statements material to the risk in the application.  Upon her son's death, the applicant sought to recover under the policy.  While it was clear that the answers given by the applicant in the application were false, the applicant claimed that she did not read it before signing it.  Nevertheless, the court held that the statements written in the application by the local agent were actually or constructively known to the applicant and that "she may not thereafter repudiate the answers in the application and recover on the policy." *Id.* at 410.  *See also Reserve Life Ins. Co. v. Thomas*, 310 S.W.2d 267, 269-70 (Ky. 1958).  In short, whether they read the application or not, the Hornbacks are held to have actual or constructive knowledge of its contents.  Further, by signing the application, the Hornbacks adopted the answers as their own.

*Hornback*, 176 S.W.3d at 704.

Baldwin believes that *Hornback*, 176 S.W.3d 699 is distinguishable from the case at hand; however, we do not read *Hornback* so narrowly.  *Hornback* is clear that an applicant is, as a matter of law, responsible for the answers, correct or incorrect, in an insurance application when he or she signs their name.  *Id.*  It matters not whether the applicant or the insurance agent filled out the application. We, thus, reject Baldwin's contention that KNIC should be estopped from denying coverage and rescinding the policy.

-10-

Baldwin next contends that the incorrect answers in the homeowner's insurance application were not material per KRS 304.14-110(2), and as such, KNIC could not rescind the homeowner's insurance policy. Baldwin asserts that her prior fire loss occurred some 23 years before she signed the application for homeowner's insurance with KNIC. Baldwin points out "that C.L.U.E. (Comprehensive Loss Underwriting Exchange), the Nationwide database used by insurance companies to determine previous losses, only goes back" approximately seven years. Baldwin's Brief at 6. Additionally, Baldwin maintains that American Commerce Insurance, her previous homeowner's insurance company, only inquired about any loss over the last five years. To be material under KRS 304.14-110(2), Baldwin claims that KNIC had to demonstrate that acting reasonably and in accordance with the usual industry practice, it would have not issued insurance coverage. In this instance, Baldwin asserts that the incorrect answers in the application were not material per KRS 304.14-110(2).

KRS 304.14-110 controls where a misrepresentation is made in an insurance application. KRS 304.14-110 provides:

> All statements and descriptions in any application for an insurance policy or annuity contract, by or on behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise. This subsection shall not apply to applications taken for workers' compensation insurance coverage.

Relevant to this appeal, under KRS 304.14-110(2), the insurer may rescind a policy where the misrepresentation was "[m]aterial either to the acceptance of the risk, or to the hazard assumed by the insurer[.]" An incorrect answer in the application is considered material" if the insurer, "acting reasonably and naturally in accordance with the usual practice of . . . insurance companies under similar circumstances, would not have accepted the application . . . ." *John Hancock Mut. Life Ins. Co. v. Conway*, 240 S.W.2d 644, 646 (Ky. 1951). And, under KRS 304.14-110(3), the insurer may rescind an insurance policy where the insurer, acting in good faith, would not have issued the policy, would not have issued it at the same premium, or would not have covered the hazard causing the loss if the true facts were known to the insurer. It must be pointed out that the insurance company is permitted to rescind an insurance policy under subsection (1), (2), or (3) of KRS 304.14-110.

-12-

In this case, it is undisputed that Baldwin suffered a major fire loss to her previous home in 1994 and was paid $90,000 by her homeowner's insurance company. It is also uncontroverted that in the insurance application with KNIC, Baldwin was asked if she "ever had a fire loss," and the answer was no.

The record contains KNIC's underwriting guidelines filed with the Kentucky Department of Insurance. The guidelines provide that KNIC would not have bound a homeowner's insurance policy if the applicant had previously incurred a total or major loss. A total or major loss was identified as "[r]isks with a prior total fire loss or a major loss including any fire or theft loss in excess of $5,000 or any other loss that is not weather or catastrophe related in excess of $10,000 . . . ." In his depositional testimony, Gary Rogers, KNIC's Vice-President of underwriting, stated if an applicant for homeowner's insurance had previously incurred a major fire loss in excess of $10,000, KNIC would not issue a policy of insurance. According to Rogers, it is KNIC's customary and usual practice to not issue homeowner's insurance if the applicant previously suffered a major fire loss.

Baldwin, however, failed to present any evidence disputing that it was KNIC's usual and customary practice not to issue a homeowner's insurance policy if there has been a prior major fire loss. *See Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 198 (Ky. 2010) (citing *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001)) (holding that the moving party carries the initial burden

of demonstrating that no genuine issue of material fact exists; thereafter, the burden shifts to the nonmoving party to present some evidence showing there is a genuine issue of material fact for trial). Based upon the above uncontroverted facts, it is clear that KNIC, acting in good faith, would not have issued the homeowner's policy absent the misrepresentations in the application. Therefore, we conclude that KNIC was permitted to rescind the homeowner's policy of insurance pursuant to KRS 304.14-110(3).[2]

Baldwin also maintains that the circuit court erroneously rendered summary judgment dismissing her negligence claim against Haverstock. Baldwin claims Van Haverstock knew that she had a previous major fire loss to her home and that she owned a German Shepherd dog. Despite such knowledge, Baldwin asserts that Van Haverstock or an employee acting under his direction incorrectly answered questions concerning same in the insurance application and was negligent by doing so.

Again, we view *Hornback*, 176 S.W.3d 699 as dispositive. In *Hornback*, the Hornbacks contended that an agent of an insurance company acted negligently and breached a fiduciary duty by incorrectly filling out the application

---

[2] Baldwin also maintains that the circuit court rendered summary judgment under subsection (2) of Kentucky Revised Statutes 304.14-110, rather than subsection (3). Nonetheless, the law is clear that we may affirm the circuit court upon any basis in the record, and our review of summary judgment is *de novo*.

of insurance by indicating that Hornback did not suffer from a disease of the heart. *Id.* at 701. The Hornbacks alleged that they disclosed Hornback's heart condition to the agent. *Id.* In affirming the circuit court's summary judgment in favor of the agent, the Court of Appeals pointed out that the Hornbacks did not read the application before signing it even though they were free to do so. *Id*. at 704. The Court held that "as a matter of law, the Hornbacks adopted and were responsible for the answers when they signed the application. Thus, regardless of what disclosures were made [to the agent], the responsibility for the answers rests solely with the Hornbacks." *Hornback*, 173 S.W.3d at 704. The Court then concluded that the insurance agent was entitled to summary judgment upon the negligence claim and breach of fiduciary duty claim as a matter of law. *Id.*

Likewise, in our case, Baldwin signed the insurance application without reading it. Per *Hornback*, 173 S.W.3d at 704, Baldwin is solely responsible for the answers in the application, and Haverstock was entitled to summary judgment dismissing Baldwin's claim of negligence. Absent any allegation or evidence of fraud by Haverstock, we are duty bound to follow *Hornback* and *Bruner* cited therein. Supreme Court Rule 1:030(8).

Baldwin lastly argues that the circuit court erroneously awarded attorney's fees to KNIC. We agree.

-15-

In Kentucky, it is well-established that attorney's fees are not awarded to the prevailing party unless a statute or contractual provision specifically permits recovery thereof. *Bell v. Commonwealth, Cabinet for Health and Fam. Servs.*, 423 S.W.3d 742, 748 (Ky. 2014); *AnyConnect U.S., LLC v. Williamsburg Place, LLC*, 636 S.W.3d 556, 565 (Ky. App. 2021).

In its summary judgment awarding KNIC attorney's fees, the circuit court did not cite to a statutory or contractual provision authorizing an award of attorney's fees to KNIC, and we are aware of none. Moreover, KNIC fails to address its entitlement to attorney's fees in its brief. Accordingly, we are of the opinion that KNIC was not entitled to an award of attorney's fees, and the circuit court erred by awarding same in the summary judgment.

To summarize, we are of the opinion that the circuit court properly rendered summary judgment dismissing Baldwin's claims against KNIC and Haverstock but improperly awarded KNIC attorney's fees.

For the foregoing reasons, the summary judgment of the Calloway Circuit Court is affirmed in part, reversed in part, and remanded for proceedings consistent with this Opinion.

CALDWELL, JUDGE, CONCURS.

JONES, JUDGE, CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:

Robert L. Prince
Benton, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Bethany Willcutt
Benton, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE KENTUCKY
NATIONAL INSURANCE
COMPANY:

Ben E. Stewart
Paducah, Kentucky

BRIEF FOR APPELLEE HOLTON,
MELUGIN AND HAVERSTOCK
INSURANCE AGENCY, INC.,
D/B/A HAVERSTOCK INSURANCE
AGENCY, INC.:

Ben S. Fletcher, III
Hopkinsville, Kentucky