RENDERED: APRIL 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1074-MR

ROBERT M. BRANT, DEBRA C. BARCLAY,
ANNA DUNN DENNIS, LOUDA C. BERRY,
LINDA C. MIZE, AND JESSIE M. MASTERS              APPELLANTS


APPEAL FROM MADISON CIRCUIT COURT
v.              HONORABLE WILLIAM CLOUSE, JUDGE
ACTION NO. 16-CI-00219


BRENDA TURPIN, BRENT CONGLETON,
FRED BRANDENBURG, CHARLES METCALF,
WANDA RICHARDSON, MARY KAYLOR,
REBECCA ALLEN, PAULA ISAACS, SAMMY JONES,
AND FLATWOODS CEMETERY ASSOCIATION, INC.       APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, JONES, AND K. THOMPSON, JUDGES.

ACREE, JUDGE: Appellants appeal from the Madison Circuit Court's May 4,

2017 and June 15, 2018 orders granting summary judgment in favor of Appellees.

Upon careful consideration, we affirm.

## BACKGROUND AND PROCEDURAL POSTURE

Flatwoods Cemetery Association, Inc. ("FCA") owns and operates a cemetery in Waco, Kentucky. In January 1999, FCA reorganized as a non-profit corporation under the Kentucky Nonprofit Corporation Act, KRS[1] 273.161, *et seq*. Its Articles of Incorporation specified its members would be the "legal representatives of those holding title to burial lots in the cemetery." Appellants are members of FCA; Appellees are FCA members who also comprise its Board of Directors ("Board").[2] This litigation stems from the Board's amendment of FCA's bylaws.

On April 19, 2015, the Board held a special meeting to discuss the need to amend FCA's bylaws. As explained more specifically below, the minutes of that meeting reflect the Board's concern about public perception. They feared the Cemetery was attaining a reputation that it "was not operating legally"; the Board concluded: "by-laws need[ed] to be updated to agree with the Articles of Incorporation as well as the need for additional rules in order to stop the 'aggravation' from members of the community." (Record ("R.") at 663). Copies

---

[1] Kentucky Revised Statutes.

[2] Since commencement of litigation, some of the appellees no longer serve on FCA's Board of Directors.

of the proposed amendments were distributed to the directors and they agreed to hold a second special meeting to vote on the proposed amendments.

The second special meeting convened on April 23, 2015, and the Board adopted the proposed amended bylaws. Although the bulk of the bylaws remained unchanged, Appellants found specific reason to object to the amendments, particularly those regarding election of directors.

The original bylaws provided for members to elect directors at their annual FCA membership meeting. The amended bylaws effectively divested the members of their authority to elect directors. Under the amended bylaws, current Board members elect successor directors from a slate of candidates submitted by a Nominating Committee comprised of FCA members selected by the Board.

In addition, the bylaws' amendments eliminated an apparent direct conflict between the Articles of Incorporation and the original bylaws. The Articles limited the number of directors to a maximum of seven (7), but the original bylaws provided for nine (9) directors, no more and no less; each director's term was set at one (1) year in both governing documents.

Under the amended bylaws, there initially would be seven (7) directors (conforming with the Articles) who would serve for not longer than one year. The amended bylaws provided that, thereafter, there would be nine (9) directors. During the 1-year term of the seven (7) initial directors, the Nominating

Committee's first task would be to nominate FCA members to fill a total of nine (9) director positions. Directors' terms were increased such that three of the nine directors had 3-year terms, three had 5-year terms, and three had 7-year terms.

In response, some FCA members, unhappy with these actions, held a meeting to entertain a motion for a vote of no confidence in the Board. They then scheduled another members' meeting for September 27, 2015, to elect a new board of directors ("New Board"). Notice of that meeting was published in the local newspaper. At the meeting, the members elected the Appellants as the New Board. However, the original Board refused to step down, turn over corporate documents, or relinquish control of the Corporation to the New Board, asserting they were not properly removed and that the election of the New Board was not valid under the FCA's governing documents.

Appellants filed a complaint on May 16, 2016. The complaint was brought by Appellants "on behalf of Flatwood Cemetery Association, Inc. by and through the [New Board] (the 'Corporation') and individually as the duly elected president, directors, and members of the Corporation . . . ." (R. at 3-15). It included five counts:

# COUNT I:  TURPIN'S[3] BREACH OF FIDUCIARY DUTY

. . . .

Turpin, as the former president and putative agent of the Former Board,[4] owed fiduciary duties to the Corporation, its members, and Plaintiffs as the duly elected president and/or directors, including without limitation discharging her duties as an officer in good faith.

Turpin breached her duties, which included but were not necessarily limited to (a) failing to give notice of the special meeting [to the members] conducted on or about April 23, 2015; (b) failing to seasonably notify the other members that during the meeting, the Former Board had attempted to adopt the Purported Amendment and re-elect themselves pursuant to said amendment notwithstanding prior complaints of mismanagement by members; (c) failing to seasonably produce records, materials, and other items upon request by a member as required by statute; and (d) causing there to be published false notices informing the members and the public that, inter alia, the meeting scheduled for September 27, 2015 was not an authorized election, which constituted a material and false representation, was known to be false or made recklessly, and was made with inducement to be acted upon; and/or (e) continuing to conduct business on behalf of the Corporation after being replaced.

. . . .

---

[3] Brenda Turpin was a director and President of FCA when the bylaws were amended.

[4] The complaint refers to the Board as the "Former Board."

## COUNT II: FORMER DIRECTORS' BREACHES OF FIDUCIARY DUTY

. . . .

[Appellees] owe fiduciary duties to the Corporation and its members including without limitation discharging their duties as directors in good faith.

Said individuals breached their fiduciary duties by (a) conducting a special meeting on or about April 23, 2015, during which they acted *ultra vires* by failing to give notice of the meeting, despite prior complaints of mismanagement by numerous members, and improperly attempting to amend the bylaws to disenfranchise members and establish [a] self-perpetuating board; failing to notify the members of the purported Amendment and improperly attempting to re-elect themselves pursuant to the purported Amendment; (b) failing to seasonably notify the members of the attempted election; (c) failing to hold an annual meeting of the members on the Sunday before Memorial Day or May 24, 2015 as required by the [original] Bylaws; (d) failing to seasonably produce records, materials, and other items upon request by a member as required by statute; and/or (e) otherwise continuing to conduct business on behalf of the Corporation after being replaced. Said individuals are further liable vicariously for the breaches of fiduciary committed by Turpin as their agent.

. . . .

## COUNT III: DECLARATION OF RIGHTS

. . . .

An actual controversy exists regarding whether (a) the Former Board had authority on or about April 23, 2015 to adopt the purported Amendment and re-elect themselves pursuant to said Amendment; and (b) whether the new Board was duly elected on September 27, 2015.

-6-

The Court should declare that (a) the former Board acted *ultra vires* in attempting to adopt the purported Amendment, with said Amendment being null, void, and in violation Kentucky law [sic] and the Corporation's governing documents; (b) Plaintiffs were duly elected on September 27, 2015; and (c) that the Former board continues to act *ultra vires* in conducting business on behalf of the Corporation and refusing to surrender corporate property.

## COUNT IV:  INJUNCTION

. . . .

This Court should exercise its inherent power, sitting in equity, to permanently enjoin the Defendants from holding themselves out as directors, officer, or otherwise agents of the corporation and from conducting any business on behalf of the Corporation.

The Court should further enter a permanent injunction ordering Defendants and agents to return all corporate assets, records, materials, and other items of nay kind pertaining or belonging to the Corporation.

## COUNT V:  CONVERSION

. . . .

Plaintiffs, as majority of directors of the duly elected Board, have a legal right to all records, materials, and other items of any kind owned by or pertaining to the Corporation.

Defendants are exercising dominion and control over said records, materials, and other items in a manner that has deprived Plaintiffs of their right to use and enjoy said property belonging to the Corporation, and have failed to return said property on demand.

Plaintiffs are informed and believe that Defendants, acting without authority, have contracted for services to be paid with corporate assets, including without limitation payment of an attorney to represent them in the dispute with the duly elected Board.

Such breaches have actually and proximately caused damage to Plaintiffs and the Corporation in an amount which exceeds this Court's jurisdictional minimum, which should be awarded to them or, in the alternative, the Court should order Defendants to return all such property to Brant as the duly-elected president of the Corporation and reimburse the Corporation for any funds expended *ultra vires*.

(R. at 11-14).

Among other defenses, Appellees asserted Appellants lacked standing to bring any of the claims. After denying the substance of the allegations, Appellees counterclaimed. The counterclaim alleged Appellants falsely claimed status as FCA officers and directors, effectively usurping the authority of the duly elected Board and intentionally and improperly interfering with FCA's operation and its existing and prospective business relationships.[5]

On September 29, 2016, Appellants filed a motion for partial declaratory judgment, temporary injunction, and appointment of a receiver. They sought a declaratory judgment from the circuit court that the Board's bylaws' amendments and elections of new directors were void *ultra vires* acts. They also

---

[5] Eventually, Appellees would abandon the counterclaim.

sought a temporary injunction prohibiting appellees from holding themselves out as directors, officers, and agents of FCA. (R. at 143-62). Appellees responded and moved to dismiss the Appellants' complaint. (R. at 204-08).

The circuit court held a hearing on October 25, 2016 and issued a ruling from the bench finding the bylaws were properly amended. The circuit court entered an order on May 4, 2017,[6] consistent with its October 25 findings. The order denied Appellants' motion for a temporary injunction and appointment of receiver. Additionally, it held as follows:

> The Court finds and declares that the Flatwoods Cemetery Association, Inc. properly amended its bylaws on April 23, 2015 and that the amendment and bylaws themselves comply with, and do not contravene, Kentucky Law, the Association's original bylaws, and the Association's Articles of Incorporation.

(R. at 349).

Appellees then filed a motion for summary judgment on the remaining breach of fiduciary claims. They argued the Board members owed no duties to the individual members of FCA and, regardless, no duty was breached. Appellants responded and, for the first time, specifically alleged that their complaint was a

---

[6] This delay occurred because Appellants filed a Petition for a Writ of Prohibition with this Court. The petition was denied. *Robert M. Brant, et al v Hon William G. Clouse, Jr. Judge, Madison Circuit Court, et al*, No. 2017-CA-0207-OA (Ky. App. June 8, 2017).

derivative action they filed as members bringing the claim on behalf of FCA. (R. at 627-48).

The circuit court granted Appellees' motion on June 15, 2018. It concluded that directors of a non-profit corporation only owe fiduciary duties to the corporation itself, and not to individual members. Accordingly, all individually named Appellees were dismissed. The court further concluded Kentucky law does not authorize derivative actions against non-profit corporations and, therefore, the Appellees were entitled to summary judgment on all counts in the Appellants' complaint. (R. at 827).

Nevertheless, the circuit court undertook an alternative analysis, holding as follows:

> Even if derivative actions against a non-profit corporation were permissible, the Court still finds summary judgment is appropriate. First, the [Appellants] have had ample time to conduct discovery in this matter and have not produced any evidence giving rise to any of their claims or placing in dispute a material fact. As such, there are no facts in the record supporting [Appellants'] claims. Second, the Court finds that the Board of Directors of [] Flatwoods Cemetery Association, Inc. substantially complied with all common law duties incumbent upon them and substantially complied with the requirements of KRS Chapter 273, the Chapter governing non-profit corporations. Third, the Court finds that, even if the matter were a permissible derivative suit, the [Appellants] do not adequately represent the interests of the members of the Corporation. Finally, the Court has previously determined that the amendment of the Corporation's bylaws–the root cause of this litigation–was proper, and reiterates that the

-10-

Board of Directors had the authority to amend same. *See* KRS 273.191 and *Hollins v. Edmonds*, 616 S.W.2d 801 (Ky. App. 1981).

(R. at 827-28).

Appellants then appealed from the May 4, 2017 and June 15, 2018 Orders. We set forth additional facts where necessary in the analysis.

## STANDARD OF REVIEW

"The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is 'no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (quoting Kentucky Rules of Civil Procedure (CR) 56.03). "Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions." *Id.* (citing *Malone v. Ky. Farm Bur. Mut. Ins. Co.*, 287 S.W.3d 656, 658 (Ky. 2009)).

## ANALYSIS

We agree with the circuit court that "the amendment of the Corporation's bylaws [is] the root cause of this litigation[.]" However, in addition to being the root cause, this statement identifies the ultimate fact question – was

-11-

amendment of the bylaws lawful or *ultra vires*? If we accepted Appellants' first allegation that they are pursuing their claims as the only lawful Board of Directors, we would necessarily be prejudging their claim that Appellees were not lawful Directors, effectively agreeing with Appellees' second allegation that Appellants committed *ultra vires* acts – and that takes us back to the ultimate fact question. Therefore, this cannot be our starting point for review.

The nature of these claims and defenses compel this Court to first address questions that arose only as the Appellants' cause proceeded below – in what context did Appellants initiate this action, and did they have standing to do so? We consider this question in light of the fact that Kentucky is a notice pleading jurisdiction where the central purpose of pleadings remains notice of claims and defenses. *Pete v. Anderson*, 413 S.W.3d 291, 301 (Ky. 2013).

We begin by noting that "the question of who has standing to enforce the directors' fiduciary duties - a relatively simple issue in the business context - becomes rather complex in the nonprofit context." *The Fiduciary Duties of Directors*, 105 HARV. L. REV. 1590, 1594 (1992). Appellants take two approaches. We address both.

**_Nonprofit directors owe fiduciary duty to corporation, not individual members_**

First, citing *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229 (Ky. 2013), Appellants suggest individuals injured by the conduct of a

non-profit corporation may bring direct actions against it. However, the Appellants did not sue the corporation; they sued individuals they claimed owed them a duty directly. The circuit court correctly cited *Ballard* for the rule of law that officers and directors of nonprofit corporations owe a fiduciary duty to the corporation but not to the individual members. *Id.* at 241. Their claims that the officers and directors injured them as members cannot prevail. Furthermore, because we conclude Appellees engaged in no *ultra vires* acts, as discussed below, there is no basis for concluding there was a breach of those fiduciary duties in any event.

### *Derivative actions against non-profit corporations*

Second, after effectively abandoning the first argument in their brief, the Appellants claim they brought the action against the Appellees, officers, and directors, derivatively, on behalf and in the name of the corporation. A strong argument can be made that the Kentucky legislature purposefully withheld from members of nonprofit corporations the authority to pursue actions derivatively.

Prior to 2012, among the separate chapters of Kentucky Revised Statutes governing various forms of business organization,[7] only one authorized its

---

[7] KRS Ch. 271B (Business Corporations); KRS Ch. 272 (Cooperative Corporations and Associations); KRS Ch. 272A (Kentucky Uniform Limited Cooperative Association Act); KRS CH. 273 (Religious, Charitable, and Educational Societies; Nonstock, Nonprofit Corporations); KRS Ch. 274 (Professional Service Corporations); KRS Ch. 275 (Limited Liability Companies).

member/shareholders to bring derivative actions – KRS Chapter 271B. KRS 271B.337. That year, the legislature enacted the Kentucky Uniform Limited Cooperative Association Act, 2012 Kentucky Laws Chapter 160 (HB 441) (2012). It included a provision creating a new statute expressly stating that "[a] member may maintain a derivative action to enforce a right of a limited cooperative association . . . ." KRS 272A.13-010. The Act did not add a similar new section to Chapter 273 authorizing derivative claims to be brought against nonprofit corporations.

Then, in 2015, the legislature enacted revisions to many of the chapters of Kentucky law governing the various authorized forms of business. 2015 Kentucky Laws Ch. 34 (HB 440) (2015). In that Act, the legislature expressly added to the chapter governing limited liability companies, KRS Chapter 275, the right of members to bring derivative actions. KRS 275.337. The Act did not add the same authority to Chapter 273 governing nonprofit corporations.[8]

---

[8] Furthermore, a comparison of HB 440 as posted on February 12, 2015 with the House Judiciary Committee Substitute (February 26, 2015) reveals that Sections 76 through 84 of the Act were deleted before passage. Thomas E. Rutledge, *The 2015 Amendments to the Kentucky Business Entity Statutes*, 43 N. KY. L. REV. 129, 156 (2016). Although the words "derivative action" do not appear in those deleted sections, reference is made more than once to "a proceeding by or in the right of the corporation in which the director is adjudged liable to the corporation[,]" suggesting the right to pursue a derivative action. These Sections 76 through 84 "were deleted at the request of the Kentucky Nonprofit Network." *Id.*

On the other hand, one noted Kentucky authority on derivative actions concluded that statutory authority is unnecessary. *See*, *generally*, Thomas E. Rutledge, *Who Will Watch the Watchers?: Derivative Actions in Nonprofit Corporations*, 103 KY. L.J. ONLINE 4 (Apr. 22, 2015).[9] He points out that, historically speaking, "the derivative action is a question of equitable standing that was later, in certain contexts, reduced to statute." *Id.* at 4. He posits that "equity will provide the rules applicable when the organizational statute does not specify the rules governing derivative actions." *Id.* Whether this erstwhile basis for claiming standing to bring a derivative action will be embraced remains a question, given recent Kentucky Supreme Court opinions addressing an analogous question of attorney fee awards.

Just as derivative action standing was once based in equity, so was the award of attorney fees. "The courts of the Commonwealth were previously empowered to award attorneys' fees as an equitable measure, when, within the discretion of the court, it was deemed appropriate." *Seeger v. Lanham*, 542 S.W.3d 286, 294 (Ky. 2018). In *Bell v. Commonwealth*, an attorney argued he was entitled to the circuit court's attorney fee award based on that equity principle, but

---

[9] https://www.kentuckylawjournal.org/online-originals/index.php/2015/04/22/who-will-watch-the-watchers (Last visited February 2, 2021).

the Supreme Court reversed the award, making it clear that "law trumps equity." 423 S.W.3d 742, 747 (Ky. 2014).

"Modern jurisprudence is first a creature of the governing constitutions, then of code (statutes), and of case law precedent [and] attorney's fees in Kentucky are not awarded as costs to the prevailing party unless there is a statute permitting it or as a term of a contract[] . . . ." *Id.* at 747, 748. Whether this same reasoning will apply to prohibit derivative actions unless there is a statute permitting them, this Court cannot say.

Fortunately, because of the circuit court's comprehensive analysis, we need not decide this standing question. We can presume for purposes of review, without holding, that Appellants had standing to bring this action. We can even presume, without holding, that Appellants' fiduciary duties were owed to Appellants. We can affirm the judgment on the practical grounds found by circuit court that Appellees complied with the law and FCA's organizational documents and, therefore, breached no duties to anyone.

### *Appellees did not engage in* **ultra vires** *acts by amending the bylaws*

Appellants argue adoption of the amended bylaws was an *ultra vires* act. Specifically, they contend Appellees exceeded their authority by: (1) electing directors in violation of KRS 273.201; (2) amending the Articles in violation of

KRS 273.263; and (3) making bylaws inconsistent with the law or Articles in violation of KRS 273.191. We are not persuaded by these arguments.

Appellants believe their voting rights are secured by statute. We look to those statutes, especially those noted by Appellants.

The statute governing members voting on any measure, including election contests, is set out in KRS 273.201. In pertinent part, that statute says "[t]he right of the members . . . to vote may be limited, enlarged or denied to the extent specified in the articles of incorporation or the bylaws." KRS 273.201(1). Article VII, 1 of the Articles of Incorporation say, "The affairs and business of the corporation shall be conducted by a board of directors . . . chosen as provided in the bylaws of the corporation." (R. at 652). The original bylaws Article III(B) said, "The Board of Directors shall be elected at the annual meeting of members[,]" and we must presume the vote was not limited to members who were also directors in attendance. However, a provision more relevant to these circumstances is found in the Articles of Incorporation, stating in pertinent part, "The board of directors . . . shall have the power and authority to adopt bylaws . . . and to adopt any subsequent amendments thereto." (R. at 653). The original bylaws Article VII says:

> These by-laws may be amended, altered, changed, added to, or repealed by the affirmative vote of a majority of the Board of Directors if notice of the proposed amendment,

-17-

alteration, change, addition, or repeal be contained in the notice of the meeting to the Board of Directors.

Exercising the authority vested in the Board of Directors by these governing documents, after being given notice on April 19, 2015, the Board acted by majority vote to amend the bylaws to change the method by which directors were elected. Notwithstanding Appellants' dislike of the decision, there was nothing about the vote that violated any statute, or either the Articles or original bylaws.

Appellants point to KRS 273.263 and argue Appellees illegally circumvented FCA's Articles of Incorporation by creating a self-perpetuating Board. However, that statute addresses the procedure for amending a corporation's articles and provides no support for their argument. Furthermore, as quoted above, the Articles do not entitle members to elect directors, nor do they authorize members to be involved in the bylaws' amendment process.

In fact, when pressed on this issue by the circuit court, the Appellants could never say where any bylaw bestowed upon them this right. At the hearing, the circuit court noted that "[t]hese Articles are very barebones . . . ," and asked, "[W]here in the Articles do these bylaws in any way, shape, fashion, or form circumvent the Articles? If they did, I think you've got an argument, but I couldn't find it. Show me where the Articles of Incorporation and bylaws conflict." (Video Record (VR) 10/25/2016; 10:59:00). Counsel for Appellants could not answer.

Instead, counsel deflected the question by talking about non-profits and for-profit corporations. (VR 10/25/2016; 10:59:57). The circuit court asked again, "Show where the bylaws conflict with the Articles?" (VR 10/25/2016; 11:01:54). This time, counsel pointed to Article VII that pertains to "Membership Meetings." It says only that "[t]he members of the corporation shall be the legal representative of those holding title to burial lots in the cemetery." (R. at 652). The circuit court then pushed counsel on this issue, asking how Article VII conflicts with the bylaws because the bylaws do not redefine who comprises the members. Counsel never presented an adequate answer.

Additionally, Appellants argue amending the Articles was a violation of KRS 273.191 which says, "The bylaws may contain any provisions for the regulation and management of the affairs of a corporation *not inconsistent with law or the articles of incorporation.*" *Id.* (emphasis added). They contend the Appellees' bylaws' amendments illegally took away their rights to elect directors by adopting the disputed bylaws and that said adoption violated the law and the Articles of Incorporation. Again, we disagree.

The statutes governing FCA support the action taken by Appellees. According to KRS 273.247(4):

> Unless the articles of incorporation provide that a change in the number of directors shall be made only by amendment to the articles of incorporation, a change in the number of directors made by amendment to the bylaws

-19-

shall be controlling.  In all other cases, when a provision of the articles of incorporation is inconsistent with a bylaw, the provision of the articles of incorporation shall be controlling.

*Id.* The first half of the first sentence does not apply because these Articles do not provide that the number of directors may be changed only by amending the Articles.  The second half of the sentence does apply – "a change in the number of directors made by amendment to the bylaws shall be controlling."  Because that part of the statute controls here, the second sentence which applies "[i]n all other cases," is inapplicable.

The bylaws' amendment changing how directors are elected and the number of directors on the board is lawful.  The Appellees acted well within the confines of the law.  The amended bylaws do not conflict with the Articles, nor do the bylaws or the Articles conflict with the statutory requirements governing non-profit corporations.

***Appellees did not attempt to conceal their conduct from FCA members***

Appellants also assert that Appellees breached their duty of good faith by failing to notice them of the April 19, 2015 and April 23, 2015 special meetings in which the Board discussed and adopted the new bylaws and appointed themselves directors.  First and foremost, we fail to see how this claim implicates any duty owed to the corporation.  Nonetheless, for the sake of thorough analysis, we address it.

-20-

Appellants consistently refer to these meetings as "secret." However, the minutes of both meetings clearly state that these are special meetings of the Board. (R. at 663-64). The original bylaws, which governed the procedure for calling a special meeting at that time, states:

> The special meeting of the Board of Directors may be called by or at the request of the president or by a majority of the directors in office. Persons authorized to call special meetings of the Board of Directors may fix any place, either within or without [sic] the Commonwealth of Kentucky, as the place for holding any special meeting of the Board of Directors called by them.

(R. at 656).

Special meetings, unlike annual members meetings, call for the participation solely of the Board of Directors. There is no requirement, in either the Articles of Incorporation or the bylaws, that members be given notice of such meetings. Additionally, Appellants' assertion that Appellees attempted to conceal their meeting by declaring that copies given to the directors of the then proposed new bylaws "are not a community document [sic] and are not to be discussed with anyone since the Board has not discussed or voted on them" does not prove bad faith. To the contrary, preventing the dissemination of the work product of proposed corporate action, if anything, demonstrates appropriate business practice.

## *Appellees did not obstruct a lawful effort to remove them as directors*

Appellants learned of the adoption of new bylaws at the June 20, 2015 annual meeting. FCA members responded by subsequently holding a vote of no confidence. A document in this record, entitled "Flatwoods Cemetery Members/Shareholders Movement to Elect a New Board of Directors," states:

> As a result of the member/shareholder meeting with the Board of Directors of the Flatwoods Cemetery on June 20, 2015, the following motion was made and seconded: As a vote of "no-confidence" in the areas of finance, management, and member/shareholder cooperation, an election should be held by the members/shareholders for the purpose of electing a new Board of Directors.
>
> If you, as a member/shareholder of the Flatwoods Cemetery agree with this motion to elect a new Board of Directors, please sign below:

(R. at 763-73). From what this Court can discern, approximately 153 signatures appear on this document.[10]

FCA members then scheduled a member's meeting for September 27, 2015, to elect the New Board. Notice of this meeting was advertised in the local newspaper. In response, Appellees published the following newspaper article:

> The ad running in the Richmond Register concerning a meeting and election to be held on Sunday, September 27 at Waco Elementary is NOT an official/authorized election of the Board of Directors of the Flatwoods Cemetery. This election is being held by individuals who

---

[10] It is unclear when or where any of these signatures were obtained.

-22-

are NOT on the Board of Directors and, therefore, are not legally authorized to hold elections. All elections for Flatwoods Cemetery are held over Memorial Day Weekend as stated in the Bylaws in order for ALL shareholders to have an opportunity to vote.[11]

(R. at 775).

Nonetheless, a gathering of members occurred, at which time a vote was taken, purportedly electing the Appellants as the New Board. Appellees refused to step down from their position. Appellants contend Appellees' refusal to step down breached their duty of good faith and intentionally obstructed the Appellants' lawful effort to remove them. We disagree.

Nothing in the record indicates the meeting was called in accordance with the corporate documents. Article VII, 1 of the Articles of Incorporation states, "Special meetings of the members may be called by the president." There is no evidence the president called such a special meeting. The effort to remove the Appellees from their positions by electing their successors was not pursued by lawful means. The meeting at which a vote took place to elect the New Board was not a lawful meeting because it was not in accord with the Articles of Incorporation.

---

[11] We note the new bylaws grants the FCA Board with the authority to elect directors, not members.

Nor was the purported removal of existing directors to make room for the New Board conducted in accordance with the bylaws. Directors may be removed from office pursuant to any removal procedure provided in the articles of incorporation or bylaws. KRS 273.211(4). FCA's Articles of Incorporation do not provide such a procedure, but its bylaws do. They state:

> Any directors may be removed by . . . a vote by the burial right owners ("members") of the Flatwoods Cemetery Association, Inc. [] consisting of at least one-tenth (1/10) of the Members in favor of removal, having a maximum of one vote per burial right space. In any Member vote, opposing Co-ownership Member votes act to cancel that vote.

(R. at 734). There is no evidence this procedure was followed, nor would it matter because, without the proper notice, a meeting for any purpose was contrary to FCA's governing documents.

Additionally, Appellees did not "obstruct the lawful effort to remove them" by publishing the aforementioned advertisement in the newspaper. Nothing stated in the advertisement is incorrect. In particular, the statement in the advertisement that the September 27, 2015 meeting was unauthorized is true. There is no genuine issue of material fact regarding this claim and it was properly decided in favor of Appellees.

### *Appellees did not refuse to provide corporate records to members*

KRS 273.233 states that "[a]ll books and records of a corporation may be inspected and copied by any member, or the member's agent or attorney, for any proper purpose at any reasonable time." No Appellant claimed that right. Instead, one or more members demanded copies of documents be provided and, subsequently, demanded the records be turned over to the New Board. Nothing in the corporate documents or the statutes requires the Board to have acceded to either demand. There is no evidence that Appellants were denied the right to inspect corporate records.

### *Appellees did not fail to maintain corporate records*

KRS 273.233 requires that all corporate records must be maintained. Appellants contend "[s]ince Appellees acknowledge that they have failed to maintain [corporate] records, there is uncontroverted evidence that they have breached their duties." Appellants do not cite where Appellees acknowledged not keeping corporate records or what corporate records were not maintained. We find no merit in this argument.

### *Appellants had sufficient time to conduct discovery prior to summary judgment*

"[F]or summary judgment to be properly granted, the party opposing the motion must have been given adequate opportunity to discover the relevant facts." *Suter v. Mazyck*, 226 S.W.3d 837, 842 (Ky. App. 2007). "As a practical

matter, complex factual cases necessarily require more discovery than those where the facts are straightforward and readily accessible to all parties." *Id.*

In its summary judgment, the circuit court concluded that "the [Appellants] have had ample time to conduct discovery in this matter and have not produced any evidence giving rise to any of their claims or placing in dispute a material fact." We agree.

This is not a factually complex case. Over two years elapsed between the filing of Appellants' complaint and the circuit court's entry of summary judgment. Appellants had ample opportunity to personally inspect and copy all corporate documents and to uncover any facts supporting their claims. They failed to do so. In the interest of finality of judgments, we see no justification in reversing the circuit court's conclusion that Appellants had sufficient time to discover all that was needed to prove their allegations and failed to do so.

## CONCLUSION

Based on the foregoing, we affirm the Madison Circuit Court's May 4, 2017 and June 15, 2018 Orders.

JONES, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, CONCURRING: I agree summary judgment was appropriately granted in this case because the appellant members of the Flatwoods Cemetery Association (FCA) have not established a factual dispute as to wrongdoing on the part of its Board of Directors. I write separately to express my concern that special care needs to be taken in reviewing the Board's decision to eliminate established voting by the members, as such an action is typically not in the best interest of a nonprofit corporation. Had the members presented evidence, rather than mere supposition, that the Board was using the elimination of voting rights to harm the nonprofit by facilitating wrongdoing, I would rule that equity allows for redress through a derivative action.

The directors have a fiduciary duty to act in good faith towards the nonprofit corporation. Kentucky Revised Statutes (KRS) 273.173(1); *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 241 (Ky. 2013).

The business judgment rule provides "a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Allied Ready Mix Co., Inc. ex rel. Mattingly v. Allen*, 994 S.W.2d 4, 8-9 (Ky.App. 1998) (quoting *Spiegel v. Buntrock*, 571 A.2d 767, 774 (Del. 1990)).

While the Board may not have been acting illegally or in contravention of the articles of incorporation or bylaws in amending the bylaws so that members could no longer vote for directors, who would now nominate and vote for directors themselves, my concern is whether such a change was in the best interest of the corporation and what check there is upon the Board's actions going forward. The argument appears to be, because the directors were not forbidden from changing the mechanism for voting to concentrate power in themselves, this action comports with what is in the best interest of FCA pursuant to the business judgment rule and must be permitted.

I do not agree that this is necessarily so. While many of the amendments to the bylaws clearly would be protected by the business judgment rule, the changes to the voting system could be a self-interested change which benefits the directors in their effort to maintain power rather than benefiting the nonprofit itself.

The act of amending the bylaws cannot be considered in isolation. The amendments came at a time when appellants allege cemetery members were legitimately concerned with mismanagement, nepotism, and vote tampering during recent elections. The depth of their concern was understandable given the fact that these actions could imperil their expectations regarding the final resting place for themselves and their loved ones.

The way the Board acted in changing the election scheme contributed to an atmosphere of distrust and suspicion. While the directors may have acted within the confines of their power, just because something is permitted does not always mean it is wise. Rather than announce that the Board was considering changes to the bylaws or announcing the changes once they were adopted, the Board acted in a secretive manner which members interpreted as suspicious when the Board failed to call the annual meeting as scheduled in the previous bylaws or provide an explanation as to why the meeting was not called at that time. Further, once the Board called a meeting and admitted the bylaws had been changed, the Board appeared to be denying the members the opportunity to review the changes by setting a $35 fee for a copy of the new bylaws, an exorbitant cost for a short document. The Board treated the members' concerns as bothersome. In this context, it is understandable why the members reacted as they did.

If the Board of Directors had nefarious purposes, eliminating the check of their election by the members would conveniently prevent the members from "voting the crooks out" and replacing them. Although the bylaws retain a mechanism to remove directors by a vote of the members, without a right to elect replacements it is not an effective tool.

We live in a country that values democracy and the power of the vote. While it may be argued that electing our governmental representatives is a distinct

privilege from other types of voting, and the voting involved here is of less importance, courts should exercise extreme caution in upholding actions which remove the right to vote from the governed.

I believe that the retention of voting rights by members is usually in the best interest of a nonprofit corporation, even in the relatively small bailiwick of a cemetery association. While nefarious purposes and harm to the nonprofit corporation could not be established here, the majority opinion should not be read to foreclose redress through a derivative action in an appropriate case.

Accordingly, I concur.

BRIEFS FOR APPELLANTS:

G. Cliff Stidham
Lynn C. Stidham
Sandra L. Manche
Lexington, Kentucky

BRIEF FOR APPELLEES:

Brooks Stumbo
Mount Olivet, Kentucky